UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHAUN-DA JONES                                        :

                Petitioner,                :         11 Civ. 6178 (AT) (AJP)

        -against-                          :         **REPORT AND RECOMMENDATION**

THOMAS LAVALLEY,                               :

                Respondent.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Analisa Torres, United States District Judge:**

        Pro se petitioner Shaun-da Jones seeks a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 challenging his July 21, 2008 conviction following a jury trial in Supreme Court, New York

County, of two counts of first degree robbery, one count of second degree robbery and two counts

of second degree criminal possession of a weapon, and his sentence to an aggregate prison term of

twelve years.  (Dkt. No. 1: Pet. ¶¶ 1-5.)

        Jones' habeas petition asserts that: (1) Jones' conviction was based on legally

insufficient evidence and was against the weight of the evidence (Pet. ¶ 13(1)); (2) police lacked

reasonable suspicion to pursue Jones, and physical evidence obtained during the arrest should have

been suppressed (Pet. ¶ 13(2)); and (3) Jones' trial counsel was ineffective for failing to request

Dunaway and Mapp hearings (Pet. ¶ 13(3)).

        For the reasons set forth below, Jones' habeas corpus petition should be DENIED.

## FACTS

On August 18, 2007, Jones, Kenneth Stanley and Allen Stewart robbed Kenneth McCoy and Tarik Bailey in a Manhattan parking lot, stealing a medallion, chain and watch.  (Dkt. No. 17: Litsky Aff. Ex. A: Jones 1st Dep't Br. at 3; Litsky Aff. Ex. B: State 1st Dep't Br. at 1-2.) During the robbery, Jones fired two shots at McCoy's feet.  (Jones 1st Dep't Br. at 3; State 1st Dep't Br. at 2.)  Jones, Stanley and Stewart fled down Fifth Avenue.  (Jones 1st Dep't Br. at 3; State 1st Dep't Br. at 2.)  Police heard the shots, saw the men running from the parking lot, and pursued them down Fifth Avenue.  (Jones 1st Dep't Br. at 4; State 1st Dep't Br. at 2.)  The police apprehended Jones, Stanley and Stewart on 19th Street and recovered a loaded gun nearby and McCoy's stolen jewelry from Stanley's pocket.  (Jones 1st Dep't Br. at 4; State 1st Dep't Br. at 2-3.)  In separate lineups, McCoy and Bailey identified Jones as the individual who fired the shots.  (Jones 1st Dep't Br. at 4; State 1st Dep't Br. at 3.)

**The Pre-Trial Suppression Hearing**[1]

Prior to trial, Jones' counsel moved for Wade and Huntley hearings to suppress suggestive lineup identifications and a statement Jones made at the precinct.  (Dkt. No. 17: Litsky Aff. Ex. A: Jones 1st Dep't Br. at 6; Litsky Aff. Ex. B: State 1st Dep't Br. at 3.)  Stanley and Stewart participated in the same suppression hearing.  (Suppression Hearing Transcript ("H.") 1-2; see State 1st Dep't Br. at 3-4 & n.1.)  Stanley and Stewart also moved for Mapp and Dunaway hearings to suppress identification testimony and physical evidence, specifically the gun found near the scene

---

[1]    The transcripts for the suppression hearing, trial and sentencing are contained in Dkt. No. 17.

of the arrest and the gold chain and watch found in Stanley's pocket.  (H. 3-7, 448-49.)  Justice

James Yates held the suppression hearing on June 3, 2008.  (H. 1.)

On August 18, 2007, at around 4:30 a.m., Sergeant Michael O'Sullivan was on patrol

at the corner of Fifth Avenue and 21st Street and heard a "crashing, boom kind of sound" coming

from the direction of a parking lot on 21st Street between Fifth and Sixth Avenues.  (O'Sullivan: H.

16-17, 27-28, 32-33, 56-57, 62, 71-72.)  He was unsure if the sound was a gunshot.  (O'Sullivan: H.

27-28.)  At the same time, Lieutenant Nicholas McAteer, walking nearby toward 21st Street and

Fifth Avenue, heard two "pops" that sounded like "distant gunshots."  (McAteer: H. 84-86, 181-82,

208-11.)

Both Lt. McAteer and Sgt. O'Sullivan observed three African American men, all

wearing light-colored t-shirts and one wearing a light-blue doo-rag, running together down Fifth

Avenue between 21st and 22nd Streets.  (O'Sullivan: H. 18-22, 28-29, 34, 57-58; McAteer: H. 86-

87, 135-36, 182-83, 185, 213-14, 217-19.)  A taxicab passenger told Sgt. O'Sullivan that there was

"something going on around the corner" and pointed towards 22nd Street.  (O'Sullivan: H. 20-21,

43-46.)  Sgt. O'Sullivan pursued the three men down Fifth Avenue.  (O'Sullivan: H. 21-22.)  Sgt.

O'Sullivan saw Lt. McAteer, gestured toward the three men, and shouted that "they just shot

somebody or they just robbed somebody."  (O'Sullivan: H. 18-22, 39-43, 74; McAteer: 87-88, 137,

184-88.)  Lt. McAteer and two other officers continued the pursuit while Sgt. O'Sullivan headed

down 21st Street "to see if something actually did happen."  (O'Sullivan: H. 22-23, 38; McAteer:

H. 84-88, 184-89.)

The officers followed the men as they turned east on 20th Street and then south on

Broadway.  (McAteer: H. 89.)  Lt. McAteer repeatedly identified himself as a police officer and

ordered the three men to stop, but they continued to run.  (McAteer: H. 89, 143-44, 190, 250-53.)
Lt. McAteer observed Jones "fiddling around with his waistband" on Broadway between 19th and
20th Streets but did not see what, if anything, Jones removed from his pants.  (McAteer: H. 90-91,
95-96, 144-45, 191-92; Capers: H. 305, 337-38, 356-57.)  The officers stopped Jones, Stanley and
Stewart on 19th Street.  (O'Sullivan: H. 50; McAteer: H. 83, 89-93, 139, 143, 223-27.)

Detective Capers searched the three men and found, inter alia, two cellular
telephones, money and keys in Jones' pocket, and a watch, a medallion, money, keys, and a cell
phone in Stanley's pocket.  (Capers: H. 262-66, 309-11, 339-43, 353-55, 374-75.)  Lt. McAteer
retraced his steps and found a loaded .380 caliber pistol near the corner of 19th Street where he had
observed Jones "fiddling around with his waistband."  (McAteer: H. 90, 93-97, 157-58, 193; Capers:
H. 267-72, 343-46.)  Lt. McAteer gave the gun to Detective Capers for processing.  (McAteer: H.
96, 157-58; Capers: H. 272.)

Sgt. O'Sullivan went to the parking lot on 21st Street between Fifth and Sixth
Avenues where the robbery occurred and observed that a light pole was knocked down.  (O'Sullivan:
H. 22-23, 48-49.)   Detectives spoke with the parking lot attendant who explained that an
"altercation," possible robbery or "attempted robbery" of a white SUV had occurred in the parking
lot.  (O'Sullivan: H. 23-24, 49, 62-63.)  The SUV backed into the light pole causing the suspects to
run toward Fifth Avenue and 22nd Street.  (O'Sullivan: H. 23-26, 49-50, 62-63.)  Sgt. O'Sullivan
walked to 19th Street where he recognized the men in custody as the three men he had seen running
from the parking lot.  (O'Sullivan: H. 25.)

The police located and interviewed the victims, Bailey and McCoy.  (McAteer: H.
98-102, 147-52; Capers: H. 275-77, 317-18, 347-48, 372-74.)  Bailey stated that while returning to

his car in the parking lot with McCoy, three men approached and robbed them.  (McAteer: H. 101-03; Capers: H. 275-79.)  One of the men fired a gun in McCoy's direction.  (McAteer: H. 103-07; Capers: H. 275-79.)  McCoy handed over his watch and medallion.  (Capers: H. 275-79.)  McCoy stated that the men wore white t-shirts and the shooter was wearing a blue doo-rag.  (Capers: H. 278, 348-49, 364-66, 369, 372.)  Afraid that the men would steal the SUV, Bailey and McCoy drove off, hitting the light pole.  (McAteer: H. 101-07; Capers: H. 272-76, 321, 348.)  Both McCoy and Bailey identified Jones in lineups as the shooter.  (McAteer: H. 110-14, 129-32, 206; Capers: H. 325-26.)

Jones' counsel attempted to include Mapp and Dunaway issues at the suppression hearing although he had not filed theses motions prior to the hearing:

| [Jones' Counsel]: | This is something that just came to my attention.  A blue doo-rag was seized from Mr. Jones when he was brought in for a lineup at the Manhattan District Attorney's Office. |
|---|---|
| . . . . | |
| THE COURT: | In other words, on the day of arrest he is wearing a blue doo-rag.  They let it go.  During the interim he comes back on the other day for the lineup still wearing the blue doo-rag. |
| | By then the police figured out it has evidentiary value so they asked a judge to seize it and they did. |
| [Prosecutor]: | Exactly right. |
| THE COURT: | We will make that part of the hearing. |
| [Jones' Counsel]: | We can have the Mapp with respect to the blue doo-rag? |
| THE COURT: | Yes.  What else? |
| [Prosecutor]: | There is an order signed by [Judge Mayer], I am not prepared, I don't have the witness who seized the blue doo-rag here. |

| THE COURT: | Most of what he's doing is moving to controvert the order.  I'll look at the order and see what is in it and based on that I'll rule. . . . You are not complaining [Jones' counsel] about the manner of the seizure, you are complaining about whether there was sufficient cause and whether the order was issued properly. |
|---|---|
| | So I'll look at the order and rule on whether it was issued properly. |
| [Jones' Counsel]: | Right, not the order itself, what I'm trying to say I would have made the application in my omnibus motion for a <u>Mapp</u> hearing with respect to that doo-rag had I known that was something the People planned -- |
| THE COURT: | You are asking for permission to move to controvert the order.  I'll look at the order and motion. |

(H. 8-11.)  However, when Jones' counsel attempted a line of questioning implicating a <u>Mapp</u> issue, the judge reminded him that he was "not granted a <u>Mapp</u> or <u>Dunaway</u> hearing."  (H. 48.)  Jones' counsel attempted to argue a <u>Dunaway</u> issue for his client anyway, but was unsuccessful:

| [Jones' Counsel]: | . . . [T]he facts [d]o suggest there was no basis to detain them and chase them, and therefore, everything subsequent to the chase should also be suppressed. |
|---|---|
| [Prosecutor]: | I hate to interrupt.  If your Honor wants to hear it, I'll sit down.  I think that is the definition of what a <u>Dunaway</u> hearing would be. |
| THE COURT: | Yes.  I asked what does this have to do with a <u>Huntley</u>, <u>Wade</u> and I have not heard a good answer yet. |

(H. 394.)  Justice Yates only determined Jones' <u>Huntley</u> and <u>Wade</u> motions.  (<u>See</u> H. 448: "First of all, at the outset I understand that for Mr. Jones, this is a <u>Huntley</u>, <u>Wade</u> hearing, and at issue are in effect two line-ups and a statement given at the precinct.")

**Justice Yates' Decision**

Justice Yates denied Jones' suppression motion as to the identification testimony and granted his suppression motion as to his statements.  (H. 457-58.)  Justice Yates also granted Stewart's and Stanley's motions to suppress the physical evidence that was found during the search at the arrest scene.  (H. 448-63.)  Justice Yates denied Stanley and Stewart's <u>Dunaway</u> motions and concluded that the detectives had reasonable suspicion to justify pursuit based on a "combination of factors" in "an evolving and escalating situation."  (H. 459-63.)  These factors included: (1) Lt. McAteer recognizing the sound of a possible gunshot; (2) Sgt. O'Sullivan hearing a loud crash; (3) Sgt. O'Sullivan spotting three black males running southbound from the direction of the sound; (4) a cab occupant telling Sgt. O'Sullivan that something was happening in that direction; (5) one of the three men attempting to get into a van that sped off; and (6) Sgt. O'Sullivan informing Lt. McAteer that the three men who appeared to be fleeing had "possibly robbed or shot somebody."  (H. 449-52.)

Justice Yates held in relevant part:

[T]he People concede the interviews of Jones and [Stanley] were while defendants were in custody and without the benefit of <u>Miranda</u> warnings.  So I do find that under both the state and federal constitution, those statements need to be suppressed on the People's direct case --

. . . .

I looked at the line-ups, the pictures of the line-ups, and they are not perfect, but the law does not call for a perfect line-up.

I don't think that they are unnecessarily or unduly suggestive.  So, as a matter of due process, I find that the [line]-ups are admissible, . . . that would include two line-ups of Mr. Jones . . . .

. . . .

> Here I'm granting [Stewart and Stanley's <u>Dunaway</u>] motion.  I find the totality of circumstances here did rise to reasonable suspicion, but given the aggregate of information known to the police at the time that they were searched, this was a full blown search.

> People concede it was not a frisk, that a full blown search given the level of suspicion at this point was not supported by probable cause to arrest at this point in time.

> The police were investigating an ongoing situation, but they did not know a crime had been committed and a probable cause level or that the defendants committed it, so I'm granting the motion to suppress with regard to the watch, gold chain and cell phone, and property recovered from Stanley, and similarly cell phone and money and similar property recovered from the pocket of Stewart.

(H. 457-58, 463.)

**Jones' Trial**

Jones and Stewart proceeded to a jury trial before Justice Yates.  (Trial Transcript ("Tr.") 1.)[2/]

**The People's Case**

At approximately 4:30 a.m. on August 18, 2007, McCoy, Bailey and another friend left a nightclub on 19th Street between Fifth and Sixth Avenues and walked toward Bailey's SUV located in a parking lot between 21st and 22nd Streets and Fifth and Sixth Avenues.  (McCoy: Tr. 117-22, 149-50, 187-95, 244-46; Bailey: Tr. 478-82.)  The parking lot was well-lit by street lamps. (McCoy: Tr. 121.)  As they approached the SUV, McCoy saw three men wearing white t-shirts out of "the corner of [his] eye" walking parallel to him.  (McCoy: Tr. 121-24, 234-40, 415-18, 433-34, 469.)

---

[2/]     Stanley was convicted in a separate trial.  (<u>See</u> Dkt. No. 17: Litsky Aff. Ex. B: State 1st Dep't Br. at 3-4 n.1.)

Stanley, wearing a red hat, and Jones, wearing a blue doo-rag, approached McCoy and told him to "give up" his belongings. (McCoy: Tr. 122-24, 165-66, 243.) Stewart, who had braided hair and a white t-shirt with a gold design, remained back. (McCoy: Tr. 125-26.) McCoy pulled away and Jones brandished a gun and fired twice toward the ground in front of McCoy. (McCoy: Tr. 122-23, 125, 136-37, 212-13, 232, 418-20, 442, 456-59.) Jones removed the chain from McCoy's neck and Stanley took McCoy's watch off of his wrist. (McCoy: Tr. 124-25, 418-20, 436, 461-62.) As he was getting into the car, Bailey heard the gunshots (Bailey: Tr. 483-44, 504, 511-15, 545-47), started the car and backed into a light pole, knocking it down (McCoy: Tr. 126-27, 166, 437, 463; Bailey: Tr. 483-85, 499-500, 505, 518-19, 550). Once Bailey put the car in drive, he saw Jones still displaying the gun. (Bailey: Tr. 505, 520-22.) Bailey did not see any head covering and described Jones as having long hair. (Bailey: Tr. 520-21, 542-43.)[3]

---

[3]   On cross-examination, Jones' counsel highlighted inconsistencies between Bailey's trial and grand jury testimony:

> Q.   Now, to continue Mr. Bailey. I'm referring to your grand jury testimony and I'm going to start with the question on line 14 page 18.
>
>        Question: Do you recall anything about, anything specific about what they were wearing? And the answer: Yeah, I know the guy that, ah, that had the gun. He was wearing a white shirt, he had braids in his hair. Skin was a little lighter than mine. Do you recall stating that?
>
> A.   Probably might have, 10 months ago.
>
> Q.   Sorry?
>
> A.   I might have, yes, I don't recall stating that but obviously I said that 10 months ago.
>
> Q.   So at this point having heard that, the individual that you observed with the
>                                                                      (continued...)

The sound of the SUV hitting the light pole "startled [the robbers] and they took off running" toward Fifth Avenue on 22nd Street.  (McCoy: Tr. 126-27, 166; Bailey: Tr. 486, 524-25.) Moments later, a police car arrived and McCoy told the officers that he had been robbed and that the robbers had run towards Fifth Avenue.  (McCoy: Tr. 126, 128, 166-67, 421-23.)  The police car drove off in that direction.  (McCoy: 128, 166-67, 424-25.)  McCoy got into the SUV with Bailey, and they drove for five to ten minutes unsuccessfully looking for the three men.  (McCoy: 129, 167, 206-09; Bailey: Tr. 488.)

Around 4:30 a.m., Sgt. O'Sullivan, who was on club detail at the corner of 21st Street and Fifth Avenue, "heard a large crash sound," "[l]ike a boom," coming from down the block toward Sixth Avenue.  (O'Sullivan: Tr. 562-68, 577-78, 584.)  He observed three dark-skinned males wearing light colored t-shirts emerge from the vicinity of 22nd Street and run together down Fifth Avenue.  (O'Sullivan: Tr. 568-70, 582, 585, 588-89, 607-08.)  One of the three males opened the door of a minivan that had stopped near them but was unable to get in before the minivan sped off. (O'Sullivan: Tr. 570-71, 595-98, 604-06.)  The three men continued running south down Fifth Avenue.  (O'Sullivan: Tr. 570.)  A passenger in a nearby taxicab briefly spoke with Sgt. O'Sullivan, after which Sgt. O'Sullivan began pursuing the three males on foot.  (O'Sullivan: Tr. 571-72, 590.)[4]

---

[3]    (...continued)

            gun, did he have braids or didn't he have braids, what is your position on that?

        A.    If you asked me today I remember long hair, so that is all I remember.

(Bailey: Tr. 532-33.)

[4]    It is not clear if Sgt. O'Sullivan started to pursue the men before or after the taxicab

                        (continued...)

Sgt. O'Sullivan ran into Lt. McAteer and other officers crossing Fifth Avenue and 21st Street. (McAteer: Tr. 270, 326-27, 409-10; O'Sullivan: Tr. 572-73, 591.) Lt. McAteer, who had heard a sound "like a gunshot off in the distance" followed by a "bigger noise, more like a bang," saw the three men wearing white t-shirts running down Fifth Avenue. (McAteer: Tr. 269-70, 276-78, 325-26, 352, 355, 409-10.) He looked in the direction from which they were running and saw Sgt. O'Sullivan "pointing" and "yelling." (McAteer: Tr. 270, 275-77, 326-27, 353-54, 409.) Lt. McAteer and other officers "began to chase the three defendants south on Fifth Avenue," all of whom ignored Lt. McAteer "yelling to them, 'Police. Stop.'" (McAteer: Tr. 270-71, 280-81, 327-28, 353-55, 409-10.) With Lt. McAteer in pursuit, Sgt. O'Sullivan returned to the parking lot on 21st Street between Fifth and Sixth Avenues. (O'Sullivan: Tr. 574-75.)

Lt. McAteer followed the men down Fifth Avenue as they turned east onto 20th Street toward Broadway. (McAteer: Tr. 270-71.) He observed that Jones and Stanley were significantly taller than Stewart, that Jones was wearing a blue doo-rag, and that Stewart had braided hair. (McAteer: Tr. 270-71.) The men reached Broadway and turned south. (McAteer: Tr. 271.) As the men approached 19th Street, Lt. McAteer saw Jones "grabbing" or "fumbling at his waist," but he did not see Jones throw anything. (McAteer: Tr. 271, 329, 356-57.) The three men split up along the north and south sides of 19th Street and Stewart removed his t-shirt. (McAteer: Tr. 272-73.) Lt. McAteer, with the aid of Detective Fenfert, apprehended and handcuffed Jones and Stewart. (McAteer: Tr. 273, 332.)

---

[4/]    (...continued)
      passenger indicated something to him; he testified that he "decided to pursue after them" when he "saw them running." (O'Sullivan: Tr. 589.)

Lt. McAteer went back to retrace the suspects' route.  (McAteer: Tr. 273-74, 282-83, 357.)  He found a silver semiautomatic firearm about ten feet from the corner of 19th Street and Fifth Avenue, near where Jones had been fumbling with his waistband.  (McAteer: Tr. 283, 285, 330, 333, 346, 403.)  Detective Capers, the arresting officer, examined the gun and found it loaded with five bullets in the magazine and one round jammed in the chamber.  (McAteer: Tr. 274, 406; Capers: Tr. 634-38, 657-58, 685, 706, 737, 741.)  Analysis found no fingerprints on the gun, shell or bullet casings.  (Bekhit: Tr. 935-40.)  Only Stanley's DNA was found on the gun.  (Eng: Tr. 965-66, 969-70, 973, 974.)

Jones was wearing a white t-shirt, jean shorts and a blue doo-rag.  (Capers: Tr. 628-29.)  Sgt. O'Sullivan arrived and confirmed that these were the same men he had seen running from the parking lot.  (O'Sullivan: Tr. 576.)  Jones, Stewart and Stanley were transported to the precinct in a police van; Detective Capers searched the van and found a shell casing behind the driver and passenger seats.  (Capers: Tr. 641-44.)  The casing was tested and determined to be from the gun found by Lt. McAteer.  (Kraljic: Tr. 834.)

The online booking sheet described Jones' sneakers as white.  (Capers: Tr. 693, 701.) However, Detective Capers testified that he did not independently recall the color of Jones' shoes at the time of the arrest.  (Capers: Tr. 700-01.)  Moreover, Capers stated that he was not the officer who filled out the booking sheet and that the booking sheet contained other data inconsistent with

Detective Capers' recollection.  (Capers: Tr. 700-02.)[5/]  The booking sheet was not entered into evidence, but merely was used to refresh Detective Capers' recollection during cross-examination.

On the morning of August 18, 2007, Bailey and McCoy went to the police station to speak with officers.  (McAteer: Tr. 289-90, 363-65, 382-83; McCoy: Tr. 428-30; Bailey: Tr. 489, 535-38.)  McCoy identified the gold chain and watch recovered from Stanley as his property.  (McCoy: Tr. 130-31, 442-43.)  That afternoon, McCoy identified Jones in a line up as the shooter who wore the blue doo-rag.  (McCoy: Tr. 135-36.)  At trial, McCoy again identified Jones as the man who had the gun, saying he was "sure."  (McCoy: Tr. 136-37.)  Bailey identified Jones in a lineup as the shooter on August 22, but could not identify him in court.  (Bailey: Tr. 493-94, 542-43.)  Bailey described the gunman as wearing a white t-shirt and having long hair, but did not recall any head covering.  (Bailey: Tr. 520-21, 530-33, 557.)

The parking lot's security camera video from August 18, 2007 showed three men, identified as McCoy, Bailey and their friend, entering the parking lot.  (McCoy: Tr. 162-63; Bailey: Tr. 502-07.)  The video showed Bailey walking to the driver's side of the SUV.  (Bailey: Tr. 502-07.)  Three men, one with a blue doo-rag, identified as Jones, one with a red hat, and Stanley, were visible while McCoy and Bailey approached the car.  (McCoy: Tr. 163-65; Bailey: Tr. 502-07.)  Jones and Stanley are seen "run[ning] up to" McCoy.  (McCoy: Tr. 165-66; Bailey: Tr. 502-07.)  Jones is shown firing the gun.  (McCoy: Tr. 165-67.)  Bailey backed-up the car toward them and hit the light pole, knocking it down.  (McCoy: Tr. 165-67, Bailey: Tr. 505-07.)  The three men are seen

---

[5/]     When Jones' counsel questioned Detective Capers about the accuracy of Stewart's online booking sheet, he stated that "it does not describe him accurately.  The color is missing from his tank top, and it says here that he has work boots."  (Capers: Tr. 694-95.)

running off.  (McCoy: Tr. 165-67.)  In the video, Jones appeared to be wearing black sneakers.  (Tr. 1111-13; 1190-92.)

**Jones' Case**

Jones presented no evidence at trial.  (Tr. 989-90.)

**Jones' Summation**

Jones' counsel's summation emphasized that "Jones on that night when he was apprehended was wearing white sneakers," but in the surveillance "video, those sneakers of the shooter worn by the person with the blue doo-rag . . . were black sneakers."  (Summation: Tr. 1109-13.)  Neither Jones' fingerprints nor his DNA were on the gun.  (Summation: Tr. 1077-78.)  The gold chain was recovered from Stanley, not Jones.  (Summation: Tr. 1075.)

**The Prosecution's Summation**

Although Detective Capers testified to Jones wearing white sneakers when he was arrested, the prosecution highlighted that this easily could have been a mistake because Detective Capers "d[id] not fill out the on-line booking sheet" from which he had refreshed his recollection and because there were "other various mistakes . . . in Detective Capers's paperwork."  (Summation: Tr. 1190-92.)  Cell phone data showed that Jones and the other defendants were together near the scene of the crime after 12:15 a.m.  (Summation: Tr. 1178-85.)  There was walkie-talkie communication between Jones and Stanley up until 4:30 a.m.  (Summation: Tr. 1184-85.)  Jones was caught running with Stanley, whose DNA was found on the gun, only two minutes after shots had been fired.  (Summation: Tr. 1193, 1197.)

**Verdict & Sentence**

On July 1, 2008, the jury convicted Jones of two counts of first degree robbery, one count of second degree robbery and two counts of second degree criminal possession of a weapon. (Tr. 1359-60.)[6] On July 21, 2008, Justice Yates sentenced Jones to an aggregate prison term of twelve years. (Sentencing Tr. 1, 8.)

**Jones' Direct Appeal**

Represented by the Center for Appellate Litigation, Jones' direct appeal argued that: (1) the evidence was legally insufficient to establish Jones' guilt and the verdict was against the weight of the evidence (Dkt. No. 17: Litsky Aff. Ex. A: Jones' 1st Dep't Br. at 29-34); and (2) the police lacked the necessary suspicion to pursue Jones, Stewart, and Stanley, and physical evidence and statements resulting from the pursuit therefore should have been suppressed (Jones 1st Dep't Br. at 35-43).

The First Department unanimously affirmed Jones' conviction, People v. Jones, 75 A.D.3d 415, 415, 903 N.Y.S.2d 232, 232 (1st Dep't 2010), holding in full:

> The verdict was based on legally sufficient evidence and was not against the weight of the evidence. There is no basis for disturbing the jury's determinations concerning identification. In addition to reliable lineup identifications by two witnesses, there was extensive corroborating evidence.
>
> While defendant [Jones] moved to suppress lineup identifications as unduly suggestive and a statement as involuntary, he made no Fourth Amendment claim of any kind. Accordingly, defendant [Jones] waived his claim that the court should have suppressed physical evidence and identification testimony as fruits of an allegedly unlawful police pursuit, notwithstanding that the codefendants litigated this issue. While the hearing court ruled on generally similar claims made by the codefendants, it did not "expressly decide[]" whether defendant[ Jones'] Fourth

[6] The jury found Stewart not guilty. (Tr. 1357-58.)

Amendment rights were violated; on the contrary, it expressly declined to do so in light of defendant's waiver of the issue.  As an alternative holding, we find, based on the hearing evidence, that the police actions were entirely lawful.  Similarly, we conclude that counsel's failure to raise defendant's present claim in the suppression motion did not cause defendant any prejudice, and thus did not deprive him of effective assistance.

People v. Jones, 75 A.D.3d at 415-16, 903 N.Y.S.2d at 232-33 (citations omitted).

On September 1, 2010, the New York Court of Appeals denied leave to appeal.

People v. Jones, 15 N.Y.3d 853, 909 N.Y.S.2d 30 (2010).

**Jones' Federal Habeas Corpus Petition**

On August 24, 2011, Jones filed his pro se federal habeas corpus petition arguing that: (1) his conviction was against the weight of the evidence and the evidence was insufficient (Dkt. No. 1: Pet. ¶ 13(1)); (2) the police lacked the requisite reasonable suspicion to pursue and search Jones, and physical evidence obtained at the time of arrest should have been suppressed (Pet. ¶ 13(2)); and (3) his counsel was ineffective for failing to request Mapp and Dunaway hearings (Pet. ¶ 13(3)).

**Jones' C.P.L. § 440 Motion**

Jones indicated in his federal habeas petition that he was in the process of filing a C.P.L. § 440 motion raising his ineffective assistance claim in state court.  (Pet. ¶ 12(a)(5).)  As of August 9, 2012, Jones had not filed the § 440 motion.  (See Dkt. No. 18: State Br. at 22 n.7.)  On September 25, 2012, the Court ordered Jones to advise the Court whether he had filed his § 440 motion in state court raising the ineffective assistance of counsel claim.  (Dkt. No. 20: 9/25/12 Order.)  The Court ordered Jones to file his § 440 motion within thirty days if he had not done so already, or the claim would be deemed unexhausted and/or otherwise procedurally barred.  (9/25/12

Order.)[7/]  Receiving no response, the Court ordered both parties to show cause as to whether Jones filed his § 440 motion by the October 26, 2012 deadline.  (Dkt. No. 21: 11/7/12 Order.)  On November 19, 2012, the State informed the Court that Jones had filed his § 440 motion prior to October 26th, but that the motion was returned because there was no affidavit of service on the New York County District Attorney's Office.  (Dkt. No. 22: 11/19/12 State Letter to Court.)  On November 27, 2012, Jones wrote that he properly re-filed the § 440 motion with an affidavit of service.  (Dkt. No. 23: 11/27/12 Jones Letter to Court.)  Jones' letter included a copy of the motion. (11/27/12 Jones Letter to Court.)

On January 23, 2014, the Court ordered the parties to provide an update as to the status of Jones' § 440 motion.  (Dkt. No. 26: 1/23/14 Order.)  On February 4, 2014, the State advised that the motion was denied on May 23, 2013, but that the District Attorney's Office had failed to provide Jones with a copy of the § 440 court's order with notice of entry.  (Dkt. No. 27: 2/4/14 State Letter to Court at 1-2.)  The letter also indicated that Jones did not seek leave to appeal.  (2/4/14 State Letter to Court at 2.)  On February 5, 2014, Jones wrote the Court indicating that he was notified on June 3, 2013 that his motion was denied, but failed to indicate if he planned to take any further action.  (Dkt. No. 28: Jones 2/5/14 Letter to Court.)

Justice Patricia Nuñez denied Jones' motion both as procedurally barred and as meritless.  (Dkt. No. 27: 5/23/13 Decision & Order at 3.)  Justice Nuñez held in relevant part:

---

[7/]    See, e.g., Zarvela v. Artuz, 254 F.3d 374, 380-82 (2d Cir.) (Where some of petitioner's claims are unexhausted, the action should be stayed and petitioner given thirty days in which to file state action to exhaust unexhausted claims, and thirty days to return to the district court after exhaustion is completed.), cert. denied, 534 U.S. 1015, 122 S. Ct. 506 (2001), cited with approval, Rhines v. Weber, 544 U.S. 269, 278, 125 S. Ct. 1528, 1535 (2005) (endorsing the use of Zarvela-type stay and abeyance techniques and time limits).

CPL §440.10 (2) provides, in pertinent part, that the court <u>must</u> deny a motion to vacate a judgment when the ground or issue raised in the motion was previously determined on the merits upon an appeal from the judgment. The defendant's claim herein, that he was denied effective assistance of counsel when his trial attorney, Alex Grosshtern, failed to request a <u>Mapp/Dunaway</u> hearing, was deemed a matter of record by the Appellate Division and sufficient facts appeared on the record to have permitted adequate review on his timely appeal.  CPL §440.10 (2) bars the defendant from raising this claim herein, as the matter was already decided on direct appeal.  Consequently, this court is unauthorized to consider the same issue in this collateral attack.

Even if it were appropriate for this court to review the defendant's claim, it is without merit. . . .  Here, the defendant has failed to demonstrate how trial counsel's representation was deficient, as the decision not to assert standing to challenge the recovery of the firearm could be objectively viewed as a reasonable trial strategy.  Also, trial counsel engaged in otherwise appropriate motion practice by requesting a <u>Huntley/Wade</u> hearing to challenge the lineups conducted in the case.  A <u>Wade</u> hearing was granted and counsel participated in the hearing. . . .

Even if the deficiency prong was met . . . , then the defendant would have failed to establish that he was prejudiced by trial counsel's deficient representation. . . .  In this case, the evidence against the defendant was compelling.  As the Appellate Division noted, in finding no basis for disturbing the jury's verdict, the lineup identifications by two witnesses were reliable and there was extensive corroborating evidence.

(5/23/13 Decision & Order at 3-5, citations & fn. omitted.)

## ANALYSIS

### I.    THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[8/]

---

[8/]    See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Knowles v. Mirzayance, 556 U.S. 111, 121, 129 S. Ct. 1411, 1418 (2009); Evans v. Fischer, 712 F.3d 125, 132 (2d Cir.), cert. denied, 134 S. Ct. 238 (2013); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1691, 1693 (2011); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[9/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[10/]  The relevant Supreme Court

---

[9/]   Accord, e.g., Evans v. Fischer, 712 F.3d at 132-33; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[10/]  Accord, e.g., Marshall v. Rodgers, 133 S. Ct. 1446, 1447 (2013) (per curiam); Lafler v. Cooper, 132 S. Ct. 1376, 1390 (2012) ("A decision is contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'"); Howes v. Fields, 132 S. Ct. 1181, 1187 (2012) ("In this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'"); Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Assadourian v. Brown, 493 F. App'x 223, 225 (2d Cir. 2012) ("[H]abeas relief is only warranted where a state court unreasonably applies clearly established Supreme Court law . . . ."); Portalatin v. Graham, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir.), cert. denied, 130 S. Ct. 642 (2009); Hargett v. Giambruno, 291 F. App'x 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Yung v. Walker, 341 F.3d 104, 109-10 (2d Cir. 2003); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

jurisprudence is that in effect at the time of the state court's adjudication on the merits (in New York, usually the decision of the Appellate Division), not at the time of a subsequent decision (e.g., the New York Court of Appeals) denying leave to appeal.  Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011).

"That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42.[11/]  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'  It therefore cannot form the basis for habeas relief under AEDPA."  (citation omitted)); DelValle v. Armstrong, 306 F.3d at 1200.[12/]

As to the "contrary to" clause:

A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be

---

[11/]   Accord, e.g., Marshall v. Rodgers, 133 S. Ct. at 1449 ("[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from this Court's cases can supply such law."); Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 555 U.S. 1176, 129 S. Ct. 1312 (2009).

[12/]   See also Marshall v. Rodgers, 133 S. Ct. at 1450-51 ("Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." (citations omitted)).

contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[13/]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[14/]  However,

---

[13/]  Accord, e.g., Lafler v. Cooper, 132 S. Ct. at 1390; Cullen v. Pinholster, 131 S. Ct. at 1398; Knowles v. Mirzayance, 556 U.S. at 122, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 538 U.S. at 73-74, 123 S. Ct. at 1173-74; Evans v. Fischer, 712 F.3d at 132; Portalatin v. Graham, 624 F.3d at 79; Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d 149, 156 (2d Cir. 2009), cert. denied, 131 S. Ct. 320 (2010); Dunlap v. Burge, 583 F.3d at 164; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; DelValle v. Armstrong, 306 F.3d at 1200; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[14/]  Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1399; Waddington v. Sarausad, 555 U.S. 179, 190, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Evans v. Fischer, 712 F.3d at 133; Bierenbaum v. Graham, 607 F.3d at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d Cir.), cert. denied, 558 U.S. 1063, 130 S. Ct. 739 (2009); Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

"[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct. at 1522.  The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id.</u>[15/]  Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 409, 120 S. Ct. at 1521.[16/]  "Objectively unreasonable" is different from "clear error."

---

[15/]    See also, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1411; <u>Renico</u> v. <u>Lett</u>, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010); <u>Waddington</u> v. <u>Sarausad</u>, 555 U.S. at 190, 129 S. Ct. at 831; <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002))); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Watson</u> v. <u>Greene</u>, 640 F.3d 501, 508 (2d Cir.), <u>cert. denied</u>, 132 S. Ct. 335 (2011); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the relevant federal law should have been interpreted differently than the way it was interpreted by the state court yet still conclude that the state court's application of the federal law was not unreasonable."); <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d at 87-88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[16/]    Accord, <u>e.g.</u>, <u>McDaniel</u> v. <u>Brown</u>, 558 U.S. 120, 132-33, 130 S. Ct. 665, 673 (2010); <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Assadourian</u> v. <u>Brown</u>, 493 F. App'x at 224; <u>Watson</u> v. <u>Greene</u>, 640 F.3d at 508; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303

(continued...)

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). This is a "'substantially higher threshold'" than incorrectness. Renico v. Lett, 559 U.S. at 773, 130 S. Ct. at 1862; accord, e.g., Knowles v. Mirzayance, 556 U.S. at 123, 129 S. Ct. at 1420.[17] Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011); accord, e.g. Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013); Metrish v. Lancaster, 133 S. Ct. 1781, 1786-87 (2013). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" Cullen v. Pinholster, 131 S. Ct. at 1398 (citations omitted).[18]

---

[16] (...continued)
F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[17] However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord, e.g., Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir. 2011); Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable application' standard 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Yung v. Walker, 341 F.3d at 110; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Loliscio v. Goord, 263 F.3d at 184.

[18] Accord, e.g., Burt v. Titlow, 134 S. Ct. 10, 16 (2013) ("AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."); Metrish, v. Lancaster, 133 S. Ct. at 1787; Greene v. Fisher, 132 S. Ct. at 43; Jean v. Greene, 532 F. App'x 744, 749 (2d Cir. 2013); Santone v. Fischer, 689 F.3d 138, 147 (2d Cir.), cert. denied, 133 S. Ct. 390 (2012).

"[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149.[19] "Even if the state court issued a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . . unless application of a correct interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir.), cert. denied, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

---

[19]     The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149; accord, e.g., Nevada v. Jackson, 133 S. Ct. at 1994; Parker v. Matthews, 132 S. Ct. at 2155 ("Particularly because the Darden standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations,' the Sixth Circuit had no warrant to set aside the Kentucky Supreme Court's conclusion." (citation omitted)); Harrington v. Richter, 131 S. Ct. at 786; Renico v. Lett, 559 U.S. at 776, 130 S. Ct. at 1864; Knowles v. Mirzayance, 556 U.S. at 123, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); Watson v. Greene, 640 F.3d at 508-09; Portalatin v. Graham, 624 F.3d at 79; Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d at 157; Dunlap v. Burge, 583 F.3d at 166; Hawkins v. Costello, 460 F.3d at 243.

Court defined, legal principle to situations which that principle should have, in reason, governed."

Kennaugh v. Miller, 289 F.3d at 45.[20]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Hardy v. Cross, 132 S. Ct. 490, 491 (2011); Cullen v. Pinholster, 131 S. Ct. at 1398; Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)).[21] "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1398 ("The petitioner carries the burden of proof."); Georgison v. Donelli, 588 F.3d at 154. As the Supreme Court explained:

---

[20] Accord, e.g., Bierenbaum v. Graham, 607 F.3d at 47-48; Davis v. Grant, 532 F.3d at 140-41; Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

[21] See also, e.g., Renico v. Lett, 559 U.S. at 773, 130 S. Ct. at 1862; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Evans v. Fischer, 712 F.3d at 132 ("We focus on the state appellate court's decision and, for issues adjudicated on the merits in state court, we apply a 'highly deferential standard for evaluating state-court rulings.'"); Mosby v. Senkowski, 470 F.3d at 519.

> If this standard is difficult to meet, that is because it was meant to be. . . . [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decisions conflict with [the Supreme] Court's precedents.  It goes no further. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. at 786-87; accord, Burt v. Titlow, 134 S. Ct. at 16.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies.

> [D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  And as this Court has observed, a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d).  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

Harrington v. Richter, 131 S. Ct. at 784 (citations to Sellan v. Kuhlman, 261 F.3d at 312, & other cases omitted); accord, e.g., Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013); Cullen v. Pinholster, 131 S. Ct. at 1402; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (state court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them"); Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("Where, as here, 'a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.'"); Wilson v. Mazzuca, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection

is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[22] "'[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" Cullen v. Pinholster, 131 S. Ct. at 1402.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. at 784-85.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398; accord, e.g., Ryan v. Gonzales, 133 S. Ct. 696, 708 (2013); Greene v. Fisher, 132 S. Ct. at 44.

---

[22]    See also, e.g., Grayton v. Ercole, 691 F.3d at 169-70 & n.3; Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254." Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Burt v. Titlow, 134 S. Ct. at 15; Williams v. Ercole, 486 F. App'x 208, 211 (2d Cir.), cert. denied, 133 S. Ct. 635 (2012); Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Burt v. Titlow, 134 S. Ct. at 15; Williams v. Ercole, 486 F. App'x at 211; Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.     JONES' SUFFICIENCY AND WEIGHT OF THE EVIDENCE CLAIMS SHOULD BE DENIED

Jones claims that his conviction was supported by insufficient evidence and was against the weight of the evidence. (Dkt. No. 1: Pet. ¶ 13(1).) The First Department rejected these claims, holding that: "[t]he verdict was based on legally sufficient evidence and was not against the weight of the evidence.   There is no basis for disturbing the jury's determinations concerning identification.  In addition to reliable lineup identifications by two witnessed, there was extensive

corroborating evidence." <u>People</u> v. <u>Jones</u>, 75 A.D.3d 415, 415, 903 N.Y.S.2d 232, 232 (1st Dep't),

<u>appeal denied</u>, 15 N.Y.3d 853, 909 N.Y.S.2d 30 (2010).

**A.    Legal Principles Governing Sufficiency Of The Evidence Claims**

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a

criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged.'" <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 315,

99 S. Ct. 2781, 2787 (1979) (quoting <u>In re</u> <u>Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073

(1970)).  However, "a properly instructed jury may occasionally convict even when it can be said

that no rational trier of fact could find guilt beyond a reasonable doubt." <u>Jackson</u> v. <u>Virginia</u>, 443

U.S. at 317, 99 S. Ct. at 2788.  Accordingly, "in a challenge to a state criminal conviction brought

under 28 U.S.C. § 2254-if the settled procedural prerequisites for such a claim have otherwise been

satisfied-the applicant is entitled to habeas corpus relief if it is found that upon the record evidence

adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable

doubt." <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. at 324, 99 S. Ct. at 2791-92.

The petitioner bears a very heavy burden:

[T]he standard for appellate review of an insufficiency claim placed a "very heavy
burden" on the appellant.  Our inquiry is whether the jury, drawing reasonable
inferences from the evidence, may fairly and logically have concluded that the
defendant was guilty beyond a reasonable doubt.  In making this determination, we
must view the evidence in the light most favorable to the government and construe
all permissible inferences in its favor.

<u>United States</u> v. <u>Carson</u>, 702 F.2d 351, 361 (2d Cir.) (citations omitted), <u>cert. denied</u>, 462 U.S. 1108,

103 S. Ct. 2456, 2457 (1983).

The habeas court's review of the jury's findings is limited:

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. at 318-19, 99 S. Ct. at 2789 (citations omitted).

The Jackson v. Virginia "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16; accord, e.g., Gutierrez v. Smith, 702 F.3d 103, 113 (2d Cir. 2012), cert. denied, 134 S. Ct. 439 (2013); Langston v. Smith, 630 F.3d 310, 314 (2d Cir.), cert. denied, 132 S. Ct. 366 (2011); Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1196 (2000); Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

The AEDPA further limits this Court's role in determining sufficiency of the evidence habeas petitions. As the Supreme Court made clear, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). Thus, habeas corpus review of a sufficiency of the evidence challenge uses a "doubly

deferential standard of review." See, e.g., Santone v. Fischer, 689 F.3d 138, 154 (2d Cir.), cert. denied, 133 S. Ct. 390 (2012); Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012), cert. denied, 133 S. Ct. 1499 (2013); Garcia v. Smith, No. 11-CV-1332, 2014 WL 905544 at *13 (E.D.N.Y. Mar. 7, 2014).  As the Second Circuit explained,

> We review collateral challenges to the sufficiency of the evidence supporting a state-court jury's verdict under a doubly deferential standard of review.  First, even on direct review, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  Second, if the state courts have rejected the defendant's constitutional arguments on the merits, a federal court may not grant the writ of habeas corpus unless the state courts' decision was based on 'an unreasonable application of [] clearly established Federal law.'  Thus, where the state courts have denied a claim of insufficient evidence on the merits, we may not grant the writ unless we conclude that no reasonable court could have held that any reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt.

Garbutt v. Conway, 668 F.3d 79, 81 (2d Cir.) (per curiam) (citations omitted), cert. denied, 133 S. Ct. 311 (2012).[23/]

**B.     Application To Jones' Sufficiency Of The Evidence Claim**

Jones alleges that there was no physical evidence linking him to the crime and that the evidence was insufficient to establish his identity as the shooter.  (Dkt. No. 1: Pet. ¶ 13(1); see

---

[23/]     See also, e.g., United States v. Harvey, No. 12-1490-cr, --- F.3d ----, 2014 WL 1226831 at *2 (2d Cir. Mar. 26, 2014) (per curiam); United States v. Clark, 740 F.3d 808, 811 (2d Cir. 2014); Serrata v. Fischer, 13 Civ. 2632, 2013 WL 5708599 at *10 (S.D.N.Y. Oct. 21, 2013); Nunez v. Conway, 923 F. Supp. 2d 557, 564 (S.D.N.Y. 2013); Gonzalez v. Perez, 11 Civ. 3744, 2012 WL 2952841 at *2-3 (S.D.N.Y. July 19, 2012).

also Dkt. No. 17: Litsky Aff. Ex. A: Jones 1st Dep't Br. at 29-34.)[24/] Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Jones committed first degree robbery, which requires forcibly stealing property while armed with a deadly weapon.[25/] Four witnesses —two eye witnesses to the robbery (Bailey and McCoy) and two police officers who pursued Jones immediately after the robbery (Sgt. O'Sullivan and Lt. McAteer)—provided evidence of Jones' guilt. (See pages 8-14 above.) Indeed, the law is clear that the "'testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction.'" United States v. Frampton, 382 F.3d 213, 222 (2d Cir.), cert. denied, 543 U.S. 1037, 125 S. Ct. 815 (2004); accord, e.g., Stallings v. Heath, 11 Civ. 4894, 2012 WL 735399 at *17 (S.D.N.Y. Mar. 7, 2012) (Peck, M.J.) (single witness testimony sufficient for conviction (collecting cases)), report & rec. adopted, 2012 WL 1538513 (S.D.N.Y. May 2, 2012); Black v. Conway, 11 Civ. 0480, 2011 WL 2610530 at *10 (S.D.N.Y. June 30, 2011) (Peck, M.J.) ("[T]he fact that [there] was [] only [one] witness to pick [the defendant] out of a lineup . . . does not change the result."), report & rec. adopted, 2012 WL 6629050 (S.D.N.Y. Dec. 20, 2012); Taylor v. Brown, 10 Civ. 5262, 2011 WL 797448 at *19 (S.D.N.Y. Mar. 8, 2011) (Peck, M.J.), report & rec. adopted, 2011 WL 2493528 (S.D.N.Y. June 22, 2011).

---

[24/]     Jones does not dispute that the evidence at trial clearly established the elements of first and second degree robbery; rather, he argues that the evidence was insufficient to identify him as the perpetrator. (Pet. ¶ 13(1); Jones 1st Dep't Br at 29-34.)

[25/]     Jones was convicted of first degree robbery under Penal Law § 160.15 (2) and (4), which states: "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: . . . 2. Is armed with a deadly weapon; or . . . 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." Penal Law § 160.15(2), (4).

Here, moreover, there was corroborating evidence.  A loaded weapon was recovered in the same area where Lt. McAteer observed Jones "fiddling around with his waistband" during the chase.  (See page 12 above.)  Officers arrested Jones along with Stanley, who was in possession of the stolen jewelry and whose DNA was found on the gun.  (See pages 11-12 above.)  A police forensic analyst concluded that the discharged shell casing recovered from the police transport van was fired from the recovered weapon, eliminating the possibility that the weapon was left on the sidewalk by another person.  (See page 12 above.)

Jones' also alleges that "the assailant alleged to be [Jones] wore black sneakers in the security video that captured the crime but [Jones] wore white [sneakers] at his arrest minutes after the crime."  (Pet. ¶ 13(1).)  Although the booking sheet, which was not entered into evidence but merely used to help Detective Capers refresh his recollection (see pages 12-13 above), stated that Jones' sneakers were white at the time of arrest, it was reasonable for the jury to conclude that the booking sheet was unreliable because it contained at least one other mistake.  (See pages 12-13 & n.5 above.)  Further, Detective Capers did not prepare the booking sheet and testified that he did not recall the color of Jones' shoes.  (See pages 12-13 & n.5 above.)  Even if the video evidence was insufficiently clear to identify Jones, the video strongly corroborated Bailey and McCoy's account of the robbery.  (See page 13-14 above.)

The jury chose to credit the prosecution witnesses' testimony and convict Jones' of robbing Bailey and McCoy despite the "evidentiary anomalies" cited by Jones.  The "jury is exclusively responsible for determining a witness' credibility."  United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993) (citing United States v. Roman, 870 F.2d 65, 71 (2d Cir.), cert. denied, 490

U.S. 1109, 109 S. Ct. 3164 (1989)).[26/]  This Court may not reassess the jury's finding of credibility: "'[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony.  On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'"  Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (Jones, D.J. & Peck, M.J.).[27/]

Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State.  The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence. . . .  We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence."  Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981).[28/]  The fact that there were inconsistencies in the prosecution witnesses' testimony does not change the result.  See, e.g., Gruttola v. Hammock, 639 F.2d at 928 (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony).

As for the alleged lack of physical or DNA evidence directly linking Jones to the shooting (see Pet. ¶ 13(1)), there is no requirement that eyewitness testimony be corroborated

---

[26/]   Accord, e.g., United States v. Boisvert, No. 10-cr-8, 2011 WL 5035977 at *9 (D. Conn. Oct. 21, 2011), aff'd, 499 F. App'x 101 (2d Cir. 2012); Harris v. Smith, 06 Civ. 7824, 2011 WL 781128 at *6 (S.D.N.Y. Jan. 5, 2011), report & rec. adopted, 2011 WL 797492 (S.D.N.Y. Mar. 7, 2011).

[27/]   Accord, e.g., Wilson v. Heath, 938 F. Supp. 2d 278, 292 (N.D.N.Y. 2013); Cotto v. Fischer, 09 Civ. 9813, 2012 WL 5500575 at *25 (S.D.N.Y. Aug. 23, 2012), report & rec. adopted, 2012 WL 5499890 (S.D.N.Y. Nov. 12, 2012).

[28/]   Accord, e.g., Wilson v. Heath, 938 F. Supp. 2d at 292; Jackson v. Heath, 10 Civ. 3449, 2010 WL 3075557 at *15 (S.D.N.Y. Aug. 6, 2010) (Peck, M.J.).

by physical or DNA evidence.  See, e.g., United States v. Gonzalez, 110 F.3d 936, 940-41 (2d Cir. 1997) ("It is well settled that where, as here, the government's case is based primarily on eyewitness testimony describing criminal activity, 'any lack of corroboration [with physical evidence] goes only to the weight of the evidence, not to its sufficiency.  The weight is a matter for argument to the jury, not a ground for reversal on appeal.'" (quoting United States v. Roman, 870 F.2d at 71)); see, e.g., Robles v. Lempke, No. 09-CV-2636, 2011 WL 9381499 at *29-30 (E.D.N.Y. Sept. 9, 2011) (rejecting insufficiency of evidence claim despite lack of DNA or fingerprint evidence), report & rec. adopted, 2012 WL 5507303 (E.D.N.Y. Nov. 14, 2012).[29/]

Here, however, there was physical evidence recovered (the weapon and a discharged shell casing) – evidence which was consistent with the prosecution witnesses' version of events.  (See pages 8-14 above.)  Moreover, the DNA results did not exonerate Jones, but simply were inconclusive.  (See pages 12, 14 above.)  Jones' insufficiency claim based on an alleged lack of physical and DNA evidence is wholly without merit.   See, e.g., Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) ("Although [petitioners] emphasize the lack of physical evidence connecting them to the murder and contend that the testifying witnesses

---

[29/]    See also, e.g., Brewer v. Lape, 06 Civ. 10209, 2010 WL 3565176 at *20 (S.D.N.Y. June 11, 2010) ("[W]e are aware of no authority requiring the prosecution to introduce fingerprint or DNA evidence to establish the elements of the crime of which petitioner was convicted, and petitioner cites none."), report & rec. adopted, 2010 WL 3582888 (S.D.N.Y. Sept. 13, 2010); McKinney v. Burge, No. 04-CV-1150, 2009 WL 666396 at *25 (N.D.N.Y. Mar. 10, 2009) (jury could find guilt even where there "were no eye-witnesses, no physical evidence, and no fingerprints or DNA evidence"); Martinez v. Artuz, 99 Civ. 5744, 2001 WL 540737 at *7 (S.D.N.Y. May 22, 2001) ("Taking the evidence in the light most favorable to the prosecution . . . , this overwhelming evidence permitted a rational jury to conclude that [petitioner] was guilty of the crimes charged beyond a reasonable doubt, regardless of whether any fingerprint evidence . . . had been introduced.").

were not credible, 'a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility.'"), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); McFadden v. Pataki, 06 Civ. 13330, 2011 WL 10500868 at *25 (S.D.N.Y. Apr. 6, 2011) ("[A] single 'inconclusive' DNA test result does not clearly and convincingly demonstrate Petitioner's innocence such that no reasonable juror could have found him guilty . . . .  In any event, an 'inconclusive' test result at best connotes neither innocence nor guilt . . . ."), report & rec. adopted, 2013 WL 818601 (S.D.N.Y. Mar. 4, 2013).[30]

For the reasons stated above, this Court cannot say that the First Department's decision that the evidence was sufficient to convict Jones was contrary to or an unreasonable application of established federal law.  Accordingly, Jones' insufficient evidence habeas claim should be denied.

### C.    Jones' Weight Of The Evidence Claim Is Not Cognizable On Habeas Review

Jones' habeas petition further claims that the jury verdict was against the weight of the evidence.  (Dkt. No. 1: Pet. ¶ 13(1).)  This claim is not cognizable on habeas review.

A challenge to a verdict based on the weight of the evidence differs from one based on the sufficiency of the evidence:  "'[T]he "weight of the evidence" argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency

---

[30]    See also, e.g., Stallings v. Heath, 2012 WL 735399 at *16 n.28; Foster v. Miller, 04 Civ. 7990, 2007 WL 1893726 at *7 (S.D.N.Y. June 29, 2007); People v. Pope, 96 A.D.3d 1231, 1234, 947 N.Y.S.2d 634, 638 (3d Dep't 2012) (where "DNA testing of the shotgun was inconclusive, but defendant could not be excluded as a contributor," there was sufficient evidence to convict), appeal denied, 20 N.Y.3d 1064, 962 N.Y.S.2d 615 (2013).

claim is based on federal due process principles.'"  Woullard v. Phillips, 04 Civ. 2225, 2007 WL 1958971 at *7 (S.D.N.Y. July 6, 2007) (quoting Garbez v. Greiner, 01 Civ. 9865, 2002 WL 1760960 at *8 (S.D.N.Y. July 30, 2002) (citing People v. Bleakley, 69 N.Y.2d 490, 515 N.Y.S.2d 761 (1987))), report & rec. adopted, 2007 WL 2542433 (S.D.N.Y. Sept. 6, 2007).[31]

It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.  E.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . . ."), cert. denied, 476 U.S. 1123,

---

[31]     The New York Court of Appeals in Bleakley explained the difference as follows:

> Although the two standards of intermediate appellate review–legal sufficiency and weight of evidence–are related, each requires a discrete analysis.  For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged.  If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

> To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test.  Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further.  If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."

People v. Bleakley, 69 N.Y.2d at 495, 515 N.Y.S.2d at 763 (citations omitted).

106 S. Ct. 1991 (1986); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence"), aff'd sub nom. Craig v. Hecht, 263 U.S. 255, 44 S. Ct. 103 (1923); Jones v. Brandt, 09 Civ. 1035, 2013 WL 5423965 at *9 (S.D.N.Y. Sept. 26, 2013); Romero v. Napoli, 08 Civ. 8380, 2013 WL 3583724 at *12 (S.D.N.Y. July 15, 2013), report & rec. adopted, 2013 WL 6170636 (S.D.N.Y. Nov. 25, 2013); Stallings v. Heath, 11 Civ. 4894, 2012 WL 735399 at *18 (S.D.N.Y. Mar. 7, 2012) (Peck, M.J.) (& cases cited therein), report & rec. adopted, 2012 WL 1538513 (S.D.N.Y. May 2, 2012); Torres v. Fisher, 06 Civ. 6579, 2010 WL 1338088 at *4 (S.D.N.Y. Mar. 31, 2010); Hyatt v. Bellnier, 09 Civ. 6594, 2009 WL 3423359 at *10 & n.22 (S.D.N.Y. Oct. 23, 2009) (Peck, M.J.) (& cases cited therein); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *26-27 & n.33 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.) (& cases cited therein); Garbez v. Greiner, 2002 WL 1760960 at *8 ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a).  Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review.").[32]

---

[32]    See also, e.g., Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028 at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim."); McBride v. Senkowski, 98 Civ. 8663, 2002 WL 523275 at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (weight of evidence is not cognizable on habeas review); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles.  Accordingly, the Court is precluded from considering the [weight of the evidence] claim." (citations omitted)); Peralta v. Bintz, 00 Civ. 8935, 2001 WL 800071 at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction.  Because [petitioner] raises no cognizable federal issue, his petition must be denied."); Kearse v. Artuz, 99 Civ. 2428, 2000 WL 1253205 at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for
(continued...)

Accordingly, Jones' weight of the evidence claim should be <u>DENIED</u>.


**III.   JONES' CLAIM THAT POLICE LACKED PROBABLE CAUSE IS NOT COGNIZABLE ON HABEAS REVIEW**

Jones asserts that evidence obtained following his arrest should have been suppressed because the "police lacked the requisite reasonable suspicion to pursue" and arrest him.  (Dkt. No. 1: Pet. ¶ 13(2) <u>see also</u> Dkt. No. 17: Litsky Aff. Ex. A: Jones 1st Dep't Br. at 35-40.)

Jones' Fourth Amendment claim must be assessed by reference to the Supreme Court's decision in <u>Stone</u> v. <u>Powell</u>, 428 U.S. 465, 96 S. Ct. 3037 (1976), which precludes habeas review of Fourth Amendment claims that have been litigated in state court:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

<u>Stone</u> v. <u>Powell</u>, 428 U.S. at 494-95, 96 S. Ct. at 3052-53 (fns. omitted).[33]

---

[32]   (...continued)
federal habeas corpus relief."); <u>Rodriguez</u> v. <u>O'Keefe</u>, 96 Civ. 2094, 1996 WL 428164 at *4 (S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight of the evidence is not cognizable on <u>habeas</u> review."), <u>aff'd</u>, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9, 1997), <u>cert. denied</u>, 522 U.S. 1123, 118 S. Ct. 1068 (1998).

[33]   <u>Accord</u>, <u>e.g.</u>, <u>Wallace</u> v. <u>Kato</u>, 549 U.S. 384, 395 n.5, 127 S. Ct. 1091, 1099 n.5 (2007); <u>Withrow</u> v. <u>Williams</u>, 507 U.S. 680, 682-86, 113 S. Ct. 1745, 1748-50 (1993); <u>McCleskey</u> v. <u>Zant</u>, 499 U.S. 467, 479, 111 S. Ct. 1454, 1462 (1991); <u>Young</u> v. <u>Conway</u>, 698 F.3d 69, 85 (2d Cir. 2012), <u>cert. denied</u>, 134 S. Ct. 20 (2013); <u>Palacios</u> v. <u>Burge</u>, 589 F.3d 556, 561
(continued...)

The Second Circuit, sitting en banc, has concluded that Stone v. Powell permits

federal habeas review of exclusionary rule contentions only in limited circumstances:

> If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available.  It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted.

Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (citations omitted), cert. denied, 434 U.S.

1038, 98 S. Ct. 775 (1978).[34/] "An 'opportunity' means only that the state must make available a

---

[33/]   (...continued)
(2d Cir. 2009), cert. denied, 131 S. Ct. 267 (2010); Singh v. Miller, 104 F. App'x 770, 772 (2d Cir.), cert. denied, 543 U.S. 1026, 125 S. Ct. 668 (2004); Gandarilla v. Artuz, 322 F.3d 182, 185 (2d Cir. 2003); Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002); Fowler v. Kelly, No. 95-2527, 104 F.3d 350 (table), 1996 WL 521454 at *3 (2d Cir. Sept . 16, 1996); Capellan v. Riley, 975 F.2d 67, 69-71 (2d Cir. 1992); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991); Plunkett v. Johnson, 828 F.2d 954, 956 (2d Cir. 1987).

[34/]   Accord, e.g., Young v. Conway, 698 F.3d at 85; Munford v. Graham, 467 F. App'x 18, 19 (2d Cir. 2012); Singh v. Miller, 104 F. App'x at 772; Gandarilla v. Artuz, 322 F.3d at 185; Graham v. Costello, 299 F.3d at 133-34; Branch v. McClellan, No. 96-2954, 234 F.3d 1261 (table), 2000 WL 1720934 at *3 (2d Cir. Nov. 17, 2000); Capellan v. Riley, 975 F.2d at 70; Aziz v. Warden of Clinton Corr. Facility, 92 Civ. 104, 1992 WL 249888 at *3 (S.D.N.Y. Sept. 23, 1992), aff'd, 993 F.2d 1533 (2d Cir.), cert. denied, 510 U.S. 888, 114 S. Ct. 241 (1993); Allah v. LeFevre, 623 F. Supp. 987, 990-92 (S.D.N.Y. 1985); see also, e.g., Grayson v. Artus, No. 08-CV-0493, 2010 WL 446035 at *6 (E.D.N.Y. Feb. 1, 2010); Poole v. New York, 08 Civ. 6236, 2009 WL 3009356 at *6 (S.D.N.Y. Sept. 21, 2009); Kirk v. Burge, 646 F. Supp. 2d 534, 545 (S.D.N.Y. 2009); Pena v. New York, 04 Civ. 9499, 2008 WL 4067339 at *9 (S.D.N.Y. Aug. 26, 2008); Smith v. Senkowski, No. 97 CV 1280, 1999 WL 138903 at *6 (E.D.N.Y. Mar. 10, 1999) (Petitioner claimed he was arrested without probable cause and that his pretrial statements therefore should have been suppressed.  "A federal court is not permitted to judge the merits of the state court's decision.  The Court need only find that the State's procedure for resolving Fourth Amendment claims is 'facially adequate' and that no unconscionable breakdown' of the process occurred in the petitioner's case.  An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry
(continued...)

statutory mechanism for suppression of evidence that is tainted by an unlawful search or seizure, and that the state has not unconscionably prevented the petitioner from availing himself of that procedure."  Crawford v. Artuz, 165 F. Supp. 2d 627, 637 (S.D.N.Y. 2001).

Jones litigated his Fourth Amendment claim both at the pretrial hearing and after trial on direct appeal to the First Department.  (See page 2-8, 15-16 above.)  The First Department concluded that:

> [Because Jones] made no Fourth Amendment claim of any kind . . . , [he] waived his claim that the court should have suppressed physical evidence and identification testimony as fruits of an allegedly unlawful police pursuit . . . .  While the hearing court ruled on generally similar claims made by the codefendants, it did not "expressly decide[]" whether defendant's Fourth Amendment rights were violated; on the contrary, it expressly declined to do so in light of defendant's waiver of the issue.  As an alternative holding, we find, based on the hearing evidence, that the police actions were entirely lawful.

People v. Jones, 75 A.D.3d 415, 416, 903 N.Y.S.2d 232, 232 (1st Dep't) (citations omitted), appeal denied, 15 N.Y.3d 853, 909 N.Y.S.2d 30 (2010).  Thus, state corrective process not only was available, but exercised by Jones.  See, e.g., Singh v. Miller, 104 F. App'x at 772 (petitioner had "ample opportunity to vindicate his Fourth Amendment rights" in the state courts when, inter alia, he "raised his Fourth Amendment argument on appeal"); Gandarilla v. Artuz, 322 F.3d at 185 ("[T]he merits of a Fourth Amendment challenge are not reviewable in a federal habeas proceeding if a defendant has had a fair opportunity to litigate that question in State court . . . .").

Because Jones cannot claim a complete absence of corrective process, habeas review of his Fourth Amendment claim is only available if he demonstrates an "unconscionable breakdown"

---

[34]/      (...continued)
into the petitioner's claim." (citing Capellan v. Riley, 975 F.2d at 71)).

in the state's procedure for litigating those issues.  The Second Circuit has held that the focus of the unconscionable breakdown inquiry lies in "'the existence and application of the corrective procedures themselves'" rather than on the "'outcome resulting from the application of adequate state court corrective procedures.'"  <u>Singh</u> v. <u>Miller</u>, 104 F. App'x at 772 (quoting <u>Capellan</u> v. <u>Riley</u>, 975 F.2d at 71).  Jones does not claim any "unconscionable breakdown" in the State's procedure here, (<u>see</u> Pet. ¶ 13(2); Jones 1st Dep't Br. at 35-40), nor could he.  <u>See generally</u> <u>Calderon</u> v. <u>Perez</u>, 10 Civ. 2562, 2011 WL 293709 at *32-33 (S.D.N.Y. Jan. 28, 2011) (Peck, M.J.) (discussing when an "unconscionable breakdown does and does not occur," citing cases), <u>report & rec. adopted</u>, 2011 WL 1405029 (S.D.N.Y. Apr. 5, 2011).

> For these reasons, Jones' Fourth Amendment habeas claim should be <u>DENIED</u> as uncognizable on habeas review.[35]

---

[35]     In any event, Jones' claim is barred by an adequate and independent state law ground.  The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."  <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990).  Jones failed to raise a Fourth Amendment challenge through a C.P.L. § 710.20 motion to suppress, as required under New York Law, and the First Department deemed the claim waived.  (<u>See</u> pages 15-16 above.)  Accordingly, Jones' procedural default was an adequate and independent state ground that precludes review by this Court.  <u>See</u>, <u>e.g.</u>, <u>Garvey</u> v. <u>Duncan</u>, 485 F.3d 709, 714-15 (2d Cir. 2007) (preservation rule "applies with respect to motions to suppress as it does in every other context"); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 724-25 (2d Cir. 1996) (failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review and "'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim'" (quoting <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d at 9)).

IV.     **JONES' INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS MERITLESS**[36]

A.      **The Strickland v. Washington Standard on Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme

Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the

defendant must show that counsel's performance was deficient.  This requires showing that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment."  Id. at 687, 104 S. Ct. at 2064.[37]  This performance is to be judged by an

objective standard of reasonableness.  Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at

---

[36]     Although the Court permitted Jones to exhaust this claim in a state § 440 motion, Jones
neither sought nor showed any interest in seeking leave to appeal Justice Nunez's denial of
his motion.  (See page 17 above.)  A defendant appealing the denial of a § 440 motion must
seek leave to appeal within 30 of the receipt of a notice of entry of the judgment to be
appealed.   See C.P.L. § 460.10(4).   The New York County District Attorney's Office,
however, failed to serve notice of entry Jones after his motion was denied.  (See page 17
above.)  The Court expresses no views on whether this has tolled Jones' time to seek an
appeal, and Jones is free to pursue that argument in state court.  Nevertheless, the Court turns
to the merits of Jones' claim.

[37]     Accord, e.g., Harrington v. Richter, 131 S. Ct. 770, 787 (2011); Premo v. Moore, 131 S. Ct.
733, 739 (2011); Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); Bell
v. Miller, 500 F.3d 149, 156-57 (2d Cir. 2007); Henry v. Poole, 409 F.3d 48, 62-63 (2d Cir.
2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

2064.[38/]  The "'purpose of the effective assistance guarantee of the Sixth Amendment is . . . simply

to ensure that criminal defendants receive a fair trial.'  Thus, '[t]he benchmark for judging any claim

of ineffectiveness must be whether counsel's conduct <u>so undermined</u> the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result.'"  <u>Cullen</u> v.

<u>Pinholster</u>, 131 S. Ct. 1388, 1403 (2011) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 686, 689,

104 S. Ct. at 2063, 2065) (citation omitted).

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[39/]  Ineffective

assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning

quarterbacking' . . . .  Decisions by criminal defense counsel are often choices among bad

alternatives . . . ."  <u>Mui</u> v. <u>United States</u>, 614 F.3d 50, 57 (2d Cir. 2010); <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v.

<u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 788 ("It is 'all too tempting' to

---

[38/]  <u>Accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 521, 123 S. Ct. at 2535; <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63.

[39/]  <u>Accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787-88; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698, 122 S. Ct. at 1852; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d 36, 50-51 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1693 (2011); <u>Bell</u> v. <u>Miller</u>, 500 F.3d at 156-57; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).

'second-guess counsel's assistance after conviction or adverse sentence.'")  Petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment."  <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787 (quotations omitted).

Second, the defendant must show prejudice from counsel's performance.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 687, 104 S. Ct. at 2064; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403.  The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694, 104 S. Ct. at 2068.[40]

---

[40]   See also, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 695, 122 S. Ct. at 1850; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63-64; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95; <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 315; <u>DeLuca</u> v. <u>Lord</u>, 77 F.3d 578, 584 (2d Cir.), <u>cert. denied</u>, 519 U.S. 824, 117 S. Ct. 83 (1996).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 694, 104 S. Ct. at 2068; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 51.  The phrase "reasonable probability," despite its language, should not be confused with "'more likely than not.'"  <u>Strickler</u> v. <u>Greene</u>, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 792; <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); <u>Nix</u> v. <u>Whiteside</u>, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under <u>Strickland</u>."); <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding
(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules."  Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at  2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter 131 S. Ct. at 788; see also, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("The [Supreme] Court acknowledged that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'").

---

40/      (...continued)
      can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of
      counsel cannot be shown by a preponderance of the evidence to have determined the
      outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low
      standard of probability, albeit somewhat more likely than a "reasonable possibility."
      Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at
      1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between
      "reasonable probability" and "reasonable possibility" is "slight").

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 697, 104 S. Ct. at 2069.[41]/

In addition, the Supreme Court has counseled that:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

<u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 690-91, 104 S. Ct. at 2066.[42]/

---

[41]/   <u>Accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Robbins</u>, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000); <u>Santone</u> v. <u>Fischer</u>, 689 F.3d 138, 154 (2d Cir.) (ineffective assistance "'claim[s] must be rejected if the defendant fails to meet either the performance prong or the prejudice prong'"), <u>cert. denied</u>, 133 S. Ct. 390 (2012).

[42]/   <u>See also</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 789-90 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Moreover, an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); <u>Yarborough</u> v. <u>Gentry</u>, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); <u>Engle</u> v. <u>Isaac</u>, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); <u>Jackson</u> v. <u>Leonardo</u>, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing <u>Strickland</u> claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal." (citations omitted)); <u>Mayo</u> v. <u>Henderson</u>, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), <u>cert. denied</u>, 513 U.S. 820, 115 S. Ct. 81 (1994).

"The <u>Strickland</u> standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d at 199; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance."); <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 50-51; <u>Bell</u> v. <u>Miller</u>, 500 F.3d at 156-57. "'Surmounting <u>Strickland</u>'s high bar is never an easy task.'" <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 788 ("[T]he <u>Strickland</u> standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one.").

## B.   **Strickland And The AEDPA Review Standard**

For purposes of this Court's AEDPA analysis, "the <u>Strickland</u> standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).[43] "For AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'" <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95 n.8.

Under AEDPA and <u>Strickland</u>, review is doubly deferential:

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).

---

[43]   See also, e.g., <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. 1388, 1403 (2011); <u>Premo</u> v. <u>Moore</u>, 131 S. Ct. 733, 743 (2011); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003); <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); <u>Cornell</u> v. <u>Kirkpatrick</u>, 665 F.3d 369, 374-75 (2d Cir. 2011); <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 518-19 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).

> When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. 770, 788 (2011) (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403 ("Our review . . . is thus 'doubly deferential.'"); <u>Premo</u> v. <u>Moore</u>, 131 S. Ct. at 740-41; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698-99, 122 S. Ct. at 1852 ("For [petitioner] to succeed, however, he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [state appellate court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." (citation omitted)); <u>see also</u>, <u>e.g.</u>, <u>Yarborough</u> v. <u>Gentry</u>, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); <u>Santone</u> v. <u>Fischer</u>, 689 F.3d 138, 154 (2d Cir.) ("'[T]he pivotal question' for the federal habeas court 'is whether the state court's application of the <u>Strickland</u> standard was unreasonable.'"), <u>cert. denied</u>, 133 S. Ct. 390 (2012); <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d at 519.

## C.   **Application To Jones' Claim**[44]

---

[44]   Because Jones did not appeal from the § 440 court's denial of his § 440 motion, his ineffective assistance claim is unexhausted. <u>See</u>, <u>e.g.</u>, <u>Santos</u> v. <u>Rock</u>, 10 Civ. 2896, 2011 WL 3449595 at *6-9  (S.D.N.Y. Aug. 5, 2011) (petitioner's claims were unexhausted because petitioner failed to timely appeal the denial of his C.P.L. § 440 motion to the First Department), <u>report & rec. adopted</u>, 2011 WL 4000896 (S.D.N.Y. Sept. 7, 2011); <u>Edmee</u> v. <u>Coxsackie Corr. Facility</u>, Nos. 09-Civ-3940, 09-Civ-3939, 2009 WL 3318790 at *2 (E.D.N.Y. Oct. 14, 2009) ("The failure to timely appeal the denial of petitioner's § 440.10 motion means that the claim is not only unexhausted, but procedurally barred under state law because it is too late to take that appeal and a state court would dismiss it on that ground.").

Jones asserts that counsel was ineffective for failing to request Mapp and Dunaway hearings to suppress physical and identification evidence stemming from an unlawful police pursuit. (Dkt. No. 1: Pet. ¶ 13(3).)[45/]  The First Department held that "based on the hearing evidence, that the police actions were entirely lawful" and that "counsel's failure to raise defendant's present claim in the suppression motion did not cause defendant any prejudice, and thus did not deprive him of effective assistance."  (See page 16 above.)  The § 440 court also found the claim to be without merit.  (See page 18 above.)

"[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation."  United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir.), cert. denied, 484 U.S. 958, 108 S. Ct. 357 (1987).[46/]  To prevail, therefore, Jones must show "'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'"  Mosby v. Senkowski, 470 F.3d

---

45/    A "Dunaway hearing is used to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial."  Montgomery v. Wood, 727 F. Supp. 2d 171, 185-86 (W.D.N.Y. 2010).  "A Mapp hearing is called for when the defendant alleges that physical evidence sought to be used against him or her was obtained illegally by law enforcement officers and is inadmissible at trial."  Id. at 186.

46/    See also, e.g., Nosov v. United States, 526 F. App'x 127, 129 (2d Cir. 2013) ("As we have noted, 'failure to make a meritless argument does not amount to ineffective assistance.'"), cert. denied, 134 S. Ct. 1040 (2014); Harrington v. United States, 689 F.3d 124, 130 (2d Cir. 2012) ("At the second step of analysis, a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit."); Campbell v. Lee, 11 Civ. 4438, 2013 WL 5878685 at *21 (S.D.N.Y. Oct. 11, 2013) (Peck, M.J.); United States v. Johnson, 12 Cr. 313, 2013 WL 1180392 at *3 (S.D.N.Y. Mar. 18, 2013) ("'[F]ailure to make a meritless argument does not amount to ineffective assistance.'").

515, 519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007) (quoting Kimmelman v.

Morrison, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986)).  Jones cannot meet this burden.

Jones has failed to establish that any foundation for making these motions existed.

In support of his claim, Jones offers only the conclusory assertion that "[p]olice did not have

sufficient cause to stop and arrest" him.  (Pet. ¶ 13(3).)  Justice Yates, however, denied Stewart and

Stanley's Dunaway motions, concluding that the police had reasonable suspicion to justify the

pursuit.  (See pages 7-8 above.)  Justice Yates concluded that the police were engaged in "an

evolving and escalating situation" and his decision rested on a "combination of factors " (H. 459;

see also page 7 above), including: (1) Sgt. O'Sullivan hearing a loud crash; (2) Sgt. O'Sullivan

observing three men running southbound on Fifth Avenue from the direction of the sound; (3) a

taxicab passenger alerting Sgt. O'Sullivan that something was going on in the direction of the sound;

(4) Sgt. O'Sullivan observing one of the fleeing men unsuccessfully attempt to enter a stopped

minivan; (5) Lt. McAteer recognizing two sounds as gunshots; and (6) Sgt. O'Sullivan informing

Lt. McAteer that the men possibly were fleeing from a robbery or shooting.  (See page 7 above.)

On Jones' direct appeal, the First Department held "that the police actions were

entirely lawful." (See page 16 above.)  The First Department's decision was neither contrary to nor

an unreasonable application of Supreme Court precedent.  See United States v. Williams, 13 Cr. 226,

2013 WL 4477027 at *2 (S.D.N.Y. Aug. 14, 2013) (Defendant "was seen walking in a high crime

area; he took evasive actions by turning and walking in the opposite direction of the Officers' car;

one of the Officers believed he saw a firearm protruding from [Defendant's] waistband as

[Defendant] approached the car; and as [the police officer] exited the car, [Defendant] ran, holding

his waistband area and, at one point, appeared to be tugging on the object which [the officer] believed to be a firearm.  There can be little doubt that these factors support the Officers' reasonable suspicion." (citing <u>Illinois</u> v. <u>Wardlow</u>, 528 U.S. 119, 124-26, 120 S. Ct. 673, 676-77 (2000))); <u>United States</u> v. <u>Echevarria</u>, 692 F. Supp. 2d 322, 333-34 (S.D.N.Y. 2010) (reasonable suspicion found based on "the desolate location," "the late hour," and defendant's otherwise evasive behavior).[47]

Jones also cannot show prejudice.  First, Justice Yates denied Stewart and Stanley's challenge to the legality of the police pursuit and the First Department found that Jones' failure to raise these claims did not result in any prejudice.  (<u>See</u> page 16 above.)  Because this same challenge was denied with respect to Stewart and Stanley, there is no basis to conclude that the outcome would have been different if Jones' counsel had raised it.  <u>See</u>, <u>e.g.</u>, <u>Pastor-Alvarez</u> v. <u>United States</u>, No. 99-2367, 242 F.3d 366 (table), 2000 WL 1869467 at *1 (2d Cir. Dec. 21, 2000) (finding counsel effective where petitioner moved to vacate his sentence "on the principal ground that he was denied effective assistance of counsel at sentencing because of his attorney's failure to make certain arguments paralleling those made by counsel for his codefendants" because "[w]e are not persuaded that . . . if the arguments in question had been raised on behalf of [defendant], his sentence would have been different"); <u>Curzi</u> v. <u>United States</u>, 773 F. Supp. 535, 545 (E.D.N.Y. 1991) (defendant was

---

[47]     This finding also disposes of Jones' claim with respect to the gun.  Because the gun was recovered as a result of a lawful pursuit, there was no basis to exclude it.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Russo</u>, 802 F. Supp. 864, 865-66 (E.D.N.Y. 1992) ("The case law is also clear that where a defendant tries to dispose of certain incriminating items upon the pursuit of a police officer, he can claim no reasonable expectation of privacy in the disposed of item as long as the officer's pursuit was lawful.").

not prejudiced when his counsel did not join in codefendants' pretrial motion because "the same motion was brought by his codefendants . . . and was rejected on substantive grounds in unequivocal terms"), aff'd sub nom. Laaman v. United States, 973 F.2d 107, 113-14 (2d Cir. 1992), cert. denied, 507 U.S. 954, 113 S. Ct. 1368 (1993).

           Second, Jones' cell phone hardly was critical to the prosecution's case.[48/]  "[A] court will not expend resources on an ineffective assistance claim where there is independent and overwhelming evidence to support the conviction."  Lang v. United States, 02 Cr. 1444, 2009 WL 4788430 at *2 & n.16 (S.D.N.Y. Dec. 9, 2009).  There was overwhelming evidence linking Jones to the robbery absent the cell phone records, including multiple eyewitness identifications, his presence with Stanley and Stewart during the flight, and the weapon recovered in the area where Lt. McAteer observed Jones fumbling with his waistband.  (See pages 8-14 above.)  Therefore, the First Department's finding that Jones was not prejudiced was neither contrary to nor an unreasonable application of Supreme Court precedent.  United States v. Reiter, 897 F.2d 639, 645 (2d Cir.) (even though counsel's performance fell below professionally reasonable standards, defendant's ineffective assistance claim failed "given the overwhelming evidence of [the defendant's] guilt"), cert. denied, 498 U.S. 817, 111 S. Ct. 59 (1990); Guastella v. United States, 06 Civ. 2924, 98 Cr. 1325-01, 2009 WL 1286382 at *10 (S.D.N.Y. May 8, 2009) ("Given the overwhelming evidence of [Defendant's]

---

[48/]      Cell phone records obtained from Jones' cell phone established that there were calls between Jones and Stanley around the time of the robbery.  (See page 14 above.)

guilt, there is no 'reasonable probability' that anything he claims his trial counsel failed to do or should have done differently would have altered the outcome of the trial.").[49]

Accordingly, Jones has failed to demonstrate both that counsel objectively failed to perform reasonably and that Jones suffered any prejudice as a result.  Jones' ineffective assistance of counsel claim should be <u>DENIED</u>.

## CONCLUSION

For the reasons set forth above, Jones' habeas corpus petition (Dkt. No. 1) should be <u>DENIED</u> and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.[50]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, 500 Pearl Street, Room 2210, and to my chambers, 500 Pearl Street, Room 1370.

---

[49]     <u>See</u>, <u>e.g.</u>, <u>Mejia</u> v. <u>United States</u>, 862 F. Supp. 2d 263, 282-85 (E.D.N.Y. 2012) ("Absent the purported deficiencies in counsels' performance, there is no reasonable probability that the result of the proceeding would have been different, given the strength of the government's case and the cumulative nature of [the] testimony."); <u>Ramirez</u> v. <u>Conway</u>, 07 Civ. 1832, 2008 WL 4178132 at *15 (S.D.N.Y. Sept. 5, 2008).

[50]     If Jones requires copies of any of the cases reported only in Westlaw, he should request copies from respondent's counsel.  <u>See</u> <u>Lebron</u> v. <u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

Any requests for an extension of time for filing objections must be directed to Judge Torres (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver of those objections for purposes of appeal.   Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:        New York, New York
              April 3, 2014


                                    Respectfully submitted,


                                    _____
                                    **Andrew J. Peck**
                                    United States Magistrate Judge


Copies to:        Shaun-da Jones (Mail)
                  Thomas B. Litsky, Esq. (ECF)
                  Judge Analisa Torres